IN THE UNITED STATES DISTRICT COURT   FILED
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION                **03 AUG -8 PM 2:10**

**U.S. DISTRICT COURT
N.D. OF ALABAMA**

BRUCE RUSSELL,                    )
                                  )
    Plaintiff,                    )
                                  )       CIVIL ACTION NO.
v.   .                            )
                                  )       01-AR-2743-J
CONTINENTAL CASUALTY COMPANY,     )
et al.,                           )
                                  )                    **ENTERED**
    Defendants.                   )
                                  )                  **AUG  8 2003**

## MEMORANDUM OPINION

Before the court is the motion of defendant, Continental
Casualty Company ("CNA"), for partial summary judgment.
Plaintiff, Bruce Russell, brings claims against CNA and Brad
Ragan, Inc. ("BRI") for short-term disability ("STD") and long-
term disability ("LTD") benefits pursuant to 29 U.S.C. §
1132(a)(1)(B) of the Employee Retirement Income Security Act of
1974 ("ERISA").[1]

### Statement of Undisputed Facts

Russell was employed by BRI as a tire worker in its tire
manufacturing plant until May 7, 1999.  He stopped working at age
59 after being diagnosed with acute myocardial infarction.  About
six weeks later, on July 23, 1999, Russell's treating
cardiologist submitted a written statement to CNA, the

---

[1] The court notes that BRI, although represented by the same attorneys
as CNA, has not joined in CNA's motion.  The court is not sure of the
significance of this fact, or if it has any significance.

1

administrator of BRI's self-insured, ERISA-governed disability benefits plan, diagnosing Russell as "medically disabled." Russell maintains that he is permanently disabled and, therefore, entitled to LTD benefits. In its answer, CNA admits that "documentation exists to support the allegations" that Russell was and is disabled. CNA, however, determined that Russell's coronary artery disease made him only temporarily disabled for seven days — not "totally disabled." Russell here challenges that determination.

CNA's motion asks the court to determine which of two LTD plans controls: BRI's 1995 plan or its 1999 plan. Both LTD plans provide benefits beginning 26 weeks after the onset of a qualifying disability. The maximum period for payments under both plans for an employee who becomes disabled before age 61 ends on the employee's 65th birthday. Additionally, benefits payable are reduced by any amount of Social Security Disability ("SSD") benefits "paid, payable, or for which there is a right...." Russell became entitled to SSD benefits beginning November 1999 and his 26-week period would expire on November 24, 1999 if he prevails here. Accordingly, under Russell's contention he is entitled to 55 months of LTD payments which will end on his 65th birthday — June 5, 2004. All 55 payments, of course, would be offset by his SSD benefits.

At the time of this diagnosis the only summary booklet

Russell had ever received was the summary concerning BRI's 1995 plan. The Schedule of Benefits for the 1995 plan provides that "Your Monthly Benefit ... shall be 60% of Your Salary," and defines "Salary" to include "regularly scheduled overtime and the monthly average of bonuses, incentive pay and commissions You received from Your Employer during the preceding 36 month period." Under this plan, Russell would be entitled to $522.21 per month if he prevails at a trial on the merits conducted under the standards set in response to Russell's earlier motion for partial summary judgment.

An amended plan went into effect on January 1, 1999. Similar to the 1995 plan, BRI's 1999 LTD plan provided a monthly benefit of 60% of "Monthly Earnings." But it defines "Monthly Earnings" as "the Monthly wage or salary that You were receiving from Your employer on the Date of Disability." That plan goes on to expressly exclude "overtime pay" from the calculation. Consequently, if BRI's 1999 plan is applicable, the most Russell could be entitled to recover is $1.10 per month.

### Analysis

CNA contends that BRI properly amended its 1995 LTD plan in 1999 and, consequently, that the 1999 LTD plan controls in this case. CNA argues that *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), is dispositive. There, the Supreme Court noted that "ERISA does not create any substantive entitlement to

3

employer-provided health benefits or any other kind of welfare
benefits," and employers are "generally free ..., for any reason
at any time, to adopt, modify or terminate welfare plans."  514
U.S. at 78.  The Court held that ERISA requires two things to
validly modify or terminate an existing welfare plan: (1) a
procedure for amending the plan, and (2) a procedure for
identifying the persons who have authority to amend the plan.
*Id*. (citing 29 U.S.C. § 1102(b)(3)).

The Curtiss-Wright plan stated: "The Company reserves the
right at any time and from time to time to modify or amend, in
whole or in part, any or all of the provisions of the Plan."  514
U.S. at 76.  The Supreme Court found the second requirement to
have been satisfied since the plan named "[t]he Company" as the
entity with amendment authority.  *Id*. at 79.  Although a "more
difficult question," the Court also found the first requirement
satisfied:

> the reservation clause says in effect that the plan
> may be amended "by the Company."  Curtiss-Wright is
> correct, we think, that this states an amendment
> procedure and one that, like the identification
> procedure, is more substantial than might first
> appear.  It says the plan may be amended by a
> unilateral company decision to amend, and only by
> such a decision...

*Id*.

Here, BRI's 1995 LTD plan provided that "The policy can be
amended by mutual consent between the Employer and Us."  The plan
defines "Employer" as BRI and "Us" as CNA.  Accordingly, the plan

4

can be amended by the mutual assent of BRI and CNA, and only by their joint decision.  Like the plan in *Curtiss-Wright*, this meets the two requirements of 29 U.S.C. § 1102(b)(3).

But *Curtiss-Wright* did not decide "the question at the heart of th[at] case: whether Curtiss-Wright's valid amendment procedure — amendment 'by the Company' — was complied with."  514 U.S. at 85.  Russell contends that BRI and CNA violated their fiduciary duties in deciding to amend the plan.  Specifically, Russell charges that BRI and CNA failed to furnish a summary of the material modifications and thus violated 29 U.S.C. §§ 1022(a) and 1024(b)(1).

Under ERISA, fiduciary duties attach to persons who exercise discretionary authority or control respecting "management of [the] plan or ... management or disposition of its assets." 29 U.S.C. § 1002(21)(A).  A person has such fiduciary duties only when fulfilling these defined roles.  The act of amending the terms of a plan is not fiduciary in nature.  *Curtiss-Wright*, 514 U.S. at 78; *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 890-91 (1996) (extending this rule to pension benefit plans). This is true even when the amendment, in effect, decides "who is entitled to receive Plan benefits and in what amounts or how such benefits are calculated." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).

Although amending or modifying a plan is not a fiduciary

5

act, ERISA does impose obligations on fiduciaries following a
plan amendment.  Plan administrators must furnish participants
with a readily understandable summary of any "material
modifications" in accordance with the notice and disclosure
requirements contained in 29 U.S.C. § 1024(b)(1).  *See* 29 U.S.C.
§ 1022(a).  It must be sent "not later than 210 days after the
end of the plan year in which the change is adopted to each
participant, and to each beneficiary who is receiving benefits
under the plan."  29 U.S.C.  § 1024(b)(1).  Accordingly, the
Secretary of Labor has promulgated a regulation mandating that a
plan administrator notify participants and beneficiaries of
material reductions in covered services or benefits by using
measures reasonably calculated to ensure actual receipt of the
material by the plan participants.  *See* 29 C.F.R. §
2520.104b-1(b)(1).  These notice provisions guarantee that an
ERISA plan "participant knows exactly where he stands with
respect to the plan."  H.R.Rep. No. 93-533, p.11 (1973),
*reprinted in* 1974 U.S.C.C.A.N. 4639, 4649; *see Firestone Tire &
Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989).

In furtherance of this congressional goal, circuit courts
hold that pre-amendment plan provisions control over an otherwise
properly amended plan if there is a showing of bad faith, or
active concealment on the part of the sponsor, or prejudice to
the beneficiary as a result of something less than full

6

disclosure. *Loskill v. Barnett Banks, Inc. Severance Pay Plan*, 289 F.3d 734, 738 (11th Cir. 2002) (per curiam), *cert. denied*, -- U.S.--, 123 S. Ct. 965 (2003); *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 40 F.3d 1202, 1211-12 (11th Cir. 1994)(per curiam); *see also Burstein v. Retirement Account Plan For Employees of Allegheny Health Educ. & Research Foundation*, 334 F.3d 365, 378 (3rd Cir. 2003) ("where a summary plan description conflicts with the plan language, it is the summary plan description that will control"). CNA argues that there is no evidence here of active concealment or of detrimental reliance.[2] Russell, predictably, counters with an alleged prejudice to him to the tune of $521.11 per month. This dispute is interesting, but this is CNA's motion for summary judgment, not Russell's. A substantially similar Seventh Circuit case suggests that Russell's evidence need not rise to the level of proving active concealment or prejudice in order to defeat a Rule 56 motion. In *Lettrich v. J.C. Penny Co., Inc.*, 213 F.3d 765 (7th Cir. 2000), the Seventh Circuit reversed a grant of summary judgment for the plan sponsor after the beneficiary had presented evidence only that the notification requirements were not met

---

[2] In the alternative, CNA urges that Russell had constructive knowledge of the 1999 plan. Unlike this case, however, the cases CNA relies upon involved evidence of compliance with ERISA's notice rules. *Cummings v. Briggs & Stratton Ret. Plan*, 797 F.2d 383, 386 (7th Cir. 1986)(mailed two letters); *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 924 (5th Cir. 1995)(notice mailed); *Barnes v. Lacy*, 927 F.2d 539, 544 (11th Cir. 1991)(complied with the disclosure rules mandated in ERISA).

7

without proving prejudice or active concealment.  There,
Lettrich, a pharmacist, left J.C. Penny in 1997 under the belief
that he was entitled to severance benefits under a welfare-
benefits ERISA plan established in 1988.  Unbeknownst to him,
Penny had rescinded the plan in 1993.  He sued Penny claiming
that the lack of notice to beneficiaries voided Penny's 1993
cancellation.  Penny filed for summary judgment showing that it
had notified the plan participants in the middle of a sixty-two
page Notice of Meeting.  *Id*. at 766.  The district court granted
the motion.  On appeal, the Seventh Circuit found summary
judgment for the employer inappropriate.  213 F.3d at 771.  The
Circuit held, to the contrary, that evidence of failure to meet
ERISA's notice and disclosure requirements constituted
"sufficient evidence of active concealment to survive summary
judgment."  This court, without guidance from the Eleventh
Circuit, agrees with the Seventh Circuit.

Here, Russell produced summary-judgment evidence that
while BRI disseminated booklets concerning BRI's 1995 plan,
employees "never received any 1999 CNA Disability Policy."
Although the 1999 LTD plan "cancels and replaces all other
Summaries previously issued under the policy" on its face,
Russell's evidence demonstrates failure to comply with the post-
amendment fiduciary obligations in 29 U.S.C. §§ 1022(a) and
1024(b)(1).  This court is not asked to determine whether

8

standing alone that evidence is sufficient to compel a finding of active concealment, but it does present enough evidence of active concealment to survive CNA's summary-judgment motion.  It either provides an absolute answer in favor of Russell on the active concealment issue, or it provides a genuine issue of material fact on the issue and, therefore, precludes the partial summary judgment CNA seeks.

### Conclusion

The court, by separate order, will deny defendant's motion for partial summary judgment.

DONE this _8th_ day of August, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

9